Would that matter? The first case on this morning's calendar, we will take a break after probably after the first three cases that we hear this morning. The first case on our docket is Farrar v. Raemisch and this is 18-10-05 and we have for the appellate 15 minutes, the amicus amici, five minutes and then for the appellate we have 20 minutes. Thank you, your honor. May it please the court, Ms. Barnes, Mr. Crane, my name is Gayle Johnson and I represent Charles Farrar in this federal habeas appeal. Nearly 15 years ago, the complainant in this sex abuse case came back into court while represented by counsel and slowly recanted her accusations that my client and her biological mother had supposedly sexually abused her. Over and over again, she admitted under oath that she had perjured herself when she lied at Mr. Farrar's trial. Yet to this day, no jury has been allowed to hear this recantation evidence, this evidence of perjury. To assess whether taking that recantation evidence in light of the entire circumstances of the case including the trial allegations and other evidence, there's a reasonable doubt that the prosecution can prove that Mr. Farrar committed these crimes. When you take the evidence, you would have to take her first testimony as well as the second testimony. That's correct, your honor. Now, I have limited time today to discuss some very complicated issues. I know our briefs discuss four alternative pathways by which the requirements of AEDPA may be met in this case, any one of which is independently sufficient to get us over that hurdle. Well, before you start with ways to bypass AEDPA, I assume you're talking about 2254-D? That's correct, your honor. Why are you even worried about bypassing 2254-D? Because the respondent has argued that the state Supreme Court did not adjudicate the merits of an actual innocence claim, and so they haven't purported to have a basis to apply 2254-D. They've argued procedural default, and of course procedural default presupposes that the Colorado Supreme Court did not adjudicate the merits of the underlying constitutional claim. They have taken that position, but as we explain, that is incorrect for three reasons. Number one, because that procedural default defense has been waived. Well, yeah, and I'm not asking you to defend procedural default. I'm asking you why such vigor and with the amicus of trying to bypass 2254-D because nobody's arguing that 2254-D applies. He's not. Your honor, I may have construed his briefs more in the alternative that the procedural default was a defense he raised, but he was also arguing 2254-D. Okay. And so I guess I'm covering my bases in this very serious case. Certainly, certainly. And we don't all come from the same place that the judge does, so go ahead with your argument, please. Thank you. So again, there are these four alternative pathways. I wanted to focus my remarks today on the second one and the fourth one. The second one being that the Supreme Court of the United States has clearly established that it violates due process for someone to be convicted of a crime based on perjured testimony. And the fourth pathway being the unreasonable determination of facts under 2254-D. But if I could start with that second pathway. Again, we cite in our briefs the U.S. Supreme Court's decisions in Giglio v. United States from 1972 and Nippoo v. Illinois from 1959. Respondents really don't engage on, they don't address these cases at all. I would direct the court's attention in Giglio that it's not just about deliberate deception of the jury, although certainly it is partly about that. They recognize that that's a problem. But they cite Nippoo for, and they say, quote, the same result obtains when the state, although not soliciting false evidence, allows it to go uncorrected when it appears, end quote. And in Nippoo, they quote at, this is 360 U.S. at 270, they quote a New York State case that says, quote, that the district attorney's silence was not the result of guile or a desire to prejudice matters little, for its impact was the same, preventing as it did a trial that in any real sense could be termed fair, end quote. So. Did Nippoo direct, address when the prosecutor didn't know of the falsity or the actual innocence at trial? Or only when the prosecutor was complicit in that issue? I think it's ambiguous. I think they recognize the principles. It's ambiguous. Doesn't that hurt you? Because don't you have to come up with clearly established law? I don't think the law is ambiguous, that it is a due process violation, whether it's knowing suborn payment. But how can that law become unambiguous as a result of a case which you've acknowledged is ambiguous? Because the language of the case is so clear. I think the facts, if I remember correctly, are ambiguous. But what the court is saying basically is whether it's knowing subordination of perjury or not, this is a due process problem. And ordinarily, we limit ourselves to holding not dicta, but you're relying then on an exception for the Supreme Court, which we say Supreme Court dicta is entitled to special weight that we wouldn't give to dicta in other courts. Is that your line of authority? Your Honor, I understand the court's question. I guess I want to be clear that I'm not conceding today that this language is dicta. I understand that, yeah. And so if we look then, you know, the Ninth Circuit in the Maxwell case in 2010, post-EDPA case, notes that circuit authority can be persuasive both on the issue of what law is clearly established and whether state courts have unreasonably applied it. And so if the court looks at the Maxwell case, the Killen case, these stand for the Maxwell, Killen, Hall, and Sanders then from the Second Circuit. Most cases stand for the proposition that convictions based on false evidence present a due process problem, even if the prosecutor was unaware of it at the time. And I'd like to direct the court's attention in particular to, and they rely on Giglio and Napu to reach that conclusion. Particularly, I direct the court's attention to the Second Circuit's decision in Sanders. You know, they say, quote, when a credible recantation of the testimony in question would most likely change the outcome of the trial, and a state leaves the conviction in place, allowing the conviction to stand violates due process. Let me pause on that. That language, most likely change, isn't that consistent with what this Colorado Supreme Court test was? The Colorado Supreme Court said the more likely, the equivalent of probably be believed, more likely than not. So if that's the test, more likely than not, then why would you argue there was error in the Colorado court? I appreciate that question because it's such an important distinction. The language in Sanders is most likely would change the outcome. What the Colorado Supreme Court got wrong and unreasonably applied was talking about whether the recantation evidence was more persuasive than the original trial accusation. More likely than not. But that is a different standard because changing the outcome of the trial does not depend on the defendant proving his innocence by a preponderance of the evidence. Changing the outcome of the trial depends on the defendant showing that there's a reason, or not showing, whether or not the prosecution can prove it beyond a reasonable doubt. And it is that failure to correctly apply, again, the U.S. Supreme Court's reasonable doubt jurisprudence that the dissenting three justices and Farrar the people recognized was a real problem. But you're talking about a state Supreme Court decision dealing not with the conviction but with the denial of a motion for a new trial. Is there a constitutional right to move for a new trial? There's no, Abney said, there's not even a constitutional right to an appeal. So I would assume that there's no constitutional right to even move for a new trial. That's just a matter within the prerogative of the state, is it not? I think the respondents cite a couple of cases and try to read them for those very broad principles that they don't stand for. Well, is there a case that says there's a constitutional right to move for a new trial? I don't know that it says exactly that, but certainly Sanders comes up in a new trial context. Maxwell comes up in a new context. Again, these are Maxwell and those Ninth Circuit cases are post-EDPA cases recognizing that. I think the answer to his question is no. I think that he asked you, is there a specific... So I think it depends how we frame the constitutional right. The constitutional right here under our second argument that I'm discussing now is the right not to be convicted on false perjured testimony. That's a trial right. And one of the procedural... That may be your position, but what is your standard that you've got to show? I'm beginning to hear an overlap between what the amicus is wanting to argue and what you're arguing in regards to this. What must you show? In other words, you're saying I'm entitled to a new trial that was perjured testimony. Just because there was the recantation doesn't mean necessarily that she's lying now or she's lying then. I mean, there has to be a standard that you've got to show above just saying, well, there's an issue here. You've got to show more than just be an issue, don't you? Of course. What is it? What's the standard that we're going to apply if we're going to agree with you or disagree? We've got to say, this is how we reviewed it. I'd ask the court to adopt the analysis of the three dissenting justices in Farrar v. People, which correctly recognized that the standard is a reasonable probability of acquittal due to reasonable doubt. When you certainly do look, as Judge Ebell mentioned earlier, at all of the evidence, and when you look at all the evidence in this case, what you have are accusations that are wholly uncorroborated, no forensic evidence. Wait a minute. You've got the evidence of a boyfriend. You've got evidence, even though that they were admitted, I think, for impeachment purposes, and the evidence of two stepsisters that says, number one, the young lady told him that she was going to change her testimony, and the two stepsisters saying that we were molested the same way, as I recall the facts. I think the court may be conflating some of the trial evidence with some of the newly discovered evidence here. So if we look at the trial evidence... Well, whatever I'm conflating, I mean, it's there that we've got to look at. And fundamentally, I think even the majority justices in the Colorado Supreme Court implicitly acknowledged that there might be a different result under the test that had always been applied in recantation cases and newly discovered evidence cases before for RV people. They changed the standard and denied relief. So we just don't apply AEDPA at all? No, Your Honor, that's not what I'm saying. I'm saying AEDPA is met here, again, for these four reasons, one of which is this is a false evidence perjury case. And if you look again at the Ninth Circuit, Second Circuit cases and Giglio and Nippud, that matters. The fourth pathway that I did want to briefly address is the unreasonable determination of facts. And again, a majority of for RV people applied this new standard that said this can only give you a new trial if it's more persuasive. And they implicitly found that it was merely impeaching. And the dissenting justices recognized under Colorado law, there's a specific statute and a case that says these kinds of statements would come in as substantive evidence of a new trial. Why... Can I ask you a follow-up question to one of your answers to Judge Baldock? And that is, when you said that we ought to adopt the standard that was initiated by the three that surprises me a little bit. Why should we just adopt the standard enunciated by the three justices in dissent dealing with this issue of state law, rather than the Supreme Court's decision in Schlupp v. Dello that has always stood for the governing standard to determine a miscarriage of justice based on actual innocence? Why shouldn't we adopt Schlupp v. Dello as a test? The Schlupp test is slightly different in its phrasing and applies when it's necessary to use Schlupp v. Dello as an actual innocence gateway, which this court may determine it is, but that is not our first position here. And the slight difference, it's very subtle, is Schlupp talked about no juror. Well, I know the difference, but I still don't understand why you're saying we ought not to adopt the no reasonable juror test in determining actual innocence. I know it's different, but why shouldn't we adopt that? Because I think that's a slightly higher standard that applies when you have to use actual innocence as a gateway, as opposed to this claim, which I don't think you need a gateway, because again, the court unreasonably determined the facts, contrary to the concessions of the prosecutors, that this evidence was not merely impeaching. Okay, so assume that for all of the four reasons that you give, that we bypassed 2254 D. So now you've surpassed the four of EDPA. And so now we're determining, have you shown by preponderance of the evidence that there was a constitutional violation? And so now, once you've adopted Schlupp versus Dello, if you're saying that we're not just showing actual innocence, but we're actually showing that there was a perjured testimony, that seems a higher bar that you would have to overcome. And if you can't even survive the Schlupp versus Dello test, it seems a fortiori, you wouldn't be able to survive a more onerous test. I don't think it's a higher bar to say that there's a reasonable probability that a jury in the recantation and the original trial evidence would have a reasonable doubt. The only difference with Shullo is there's no reasonable juror language with it, which I think is slightly higher. I'm going to reserve 16 seconds and turn the baton to Minkus Keltz. It's going to go down a bit. Good morning, Mr. Johnson, Mr. Crane. Please pull the microphone closer. Yes, please. My name is Aurora Barnes and I am here on behalf of the scholars of federal habeas corpus. May it please the court. If the requirement that a habeas court cannot consider petitioners constitutional claims unless they meet the requirements of 2254D unreasonably binds the equitable discretion that a habeas court retained despite amicus propagation. The gateway actual innocence exception is founded on the equitable principle that it is a miscarriage of justice to convict an innocent man and to not consider the constitutional affirmative. I need you to back up first to get me past the first hurdle, and that is the case, the case, the Supreme Court case you're relying on is an issue that evolved out of a statute of limitations application in an epa to get around that the one year failing to do that. Now, as I understand what you're asking us to do, you're asking us to apply that same equitable principle to where no one has gone before. Isn't that right? That's correct. All right. I just wanted to be sure that I'm straight where you're coming from. And I'd like to make a slight distinction based on this case. So I would speak to McQuiggan versus Perkins next. So when the Supreme Court held in the quickens be Perkins, the statute of limitations did not prohibit a habeas court from considering the merits of a petitioner's constitutional claim, regardless of whether he complied with the statute of limitations. They distinctly said that it was codification did not overrule the gateway, actual innocence exception that it survived as passage with the exception of two small areas, neither of which are at issue here. So even though there was not an affirmative statement because the Supreme Court decides cases as narrowly as possible, nor did they prohibit from permitting a petitioner's constitutional claims to be considered in this type of situation. Now, Appellant's counsel is arguing to bypass that there is false testimony. As far as just an actual innocence claim, assuming that we adopt your argument and that we adopt this, we have, maybe this might persuade an embankment court, but we have a precedent of fevers, which said in footnote four, and we had several cases cited with approval of the fevers subsequently, that actual innocence is not a standalone claim for purposes of habeas. So even if we adopt this argument to bypass EDPA, the Appellant would still lose. I disagree, Your Honor. You disagree? That the Appellant would still lose? I didn't hear you. You said you disagree? Yes, Your Honor. Okay. Once you bypass EDPA, you go to a test that you previously mentioned. You look to see if by a preponderance of the evidence, there was a constitutional infirmity in petitioner's claims. So you can bypass EDPA based on a theory that the In other words, she's pursuing one theory, that there was false evidence. She can't pursue a theory that you're pursuing, that there's actual innocence to bypass EDPA. And so you're saying that we can bypass EDPA based on just an actual innocence claim. She's not arguing actual innocence. She's going one step further and saying not only was the Appellant actually innocent, but that there was false evidence. And that's what she's relying on. So it seems to me that you're pursuing bypassing EDPA on a theory that she's not pursuing, and there's a disconnect. Sure. So there are four, as she mentioned, there are four different pathways. And one of the pathways that she- Wait, wait. I didn't follow what you just said. Please. There are four different pathways that she has presented to the court to be able to find relief for Mr. Farr, for the petitioner here. Now, two things. First, I think there's a difference between a freestanding innocence claim, which this circuit's precedent prohibits, and a gateway actual innocence claim, which I think would be considered here. Second, I think that the gateway actual innocence claim is one of the pathways that she is presenting here. So while there is a disconnect between her primary argument, her due process violations that she is stating in her briefs are in line with the gateway actual innocence claim that Amicus argues should bypass EDPA. Well, I'm having trouble with where you're coming from. At some point in time, and this goes with what I think Judge Bacharach is going, the different arguments that you're making, at some point in time, we just can't assume that there is actually somewhere, somehow, she's got to come up, or somebody's got to come up with some evidence that it's more likely than not that a jury is going to go the other way. Isn't that right? I agree. And I would say that the evidence presented here would meet the Schlupp standard, and would allow for us to have a gateway actual innocence claim that would get us past the gateway actual innocence claim. I sure hope you allowed a lot of time for answering questions. I don't know if it was enough based on that. May it please the court, your honors, my name is Ryan Crane. I represent the state of Colorado in this case. Please bring the microphones to you. Your honor, I'm going to suggest there are two appropriate paths for this court to resolve the case. And I'm going to set aside our procedural default argument. I'm willing to withdraw that procedural default. I also believe that this court must independently determine whether or not the claim at issue was adjudicated on the merits by the state court. This court ruled in Guard of Egalitka that that's a determination that this court must make, whether or not 2254D applies, regardless of what the parties argue. And I'm just arguing that on I'm not going to assert that argument. I'm willing to waive that argument and proceed on the two other arguments made in the answer brief. Okay. Before you do that, I don't want to prolong this, but see, I did not understand when you argued in your brief procedural default, and you did specifically argue that 2254E applies, regardless of whether the state court adjudicated the merits. Correct. I never read your brief to say that the Colorado Supreme Court adjudicated the merits of an actual innocence claim, therefore triggering 2254D. Are you insinuating now that it did? No. What I'm arguing is, I believe it's my first and third arguments in the brief, which are the first one being, this is really, I think this is the correct way to go, but this is really an actual innocence claim. That's the way, despite invoking due process, that's the way courts, including this court, have treated claims like this. This court in the three cases cited on answer brief, pages 20 to 22, this court in Allen v. Beck in an unpublished case, as well as prior to that in Sellers v. Ward, and in at least the 11th circuit, or I'm sorry, the second circuit in Ward v. Lord. I may be confusing those two cases because the names are similar, but I apologize. Circuit courts, including this court, have treated claims like this as freestanding actual innocence claims. Despite saying that state post-conviction denial of relief was a denial of due process, really all you're asserting is actual innocence, and that's the way that we're going to treat this. I thought Sellers v. Ward, all that the court was saying there is that because you have no constitutional right to post-conviction relief, we're not going to predicate the basis for habeas relief through some irregularity in the post-conviction proceedings. I don't know that the court went any further than that. That may be correct. I know in Allen v. Beck, this court did say, and it's unpublished, but the court did say this is really an actual innocence claim. That's all this really is, despite it attempting to be invoked as something else. It's not a due process claim. The claim itself is actual innocence, and that's also what the Second Circuit said in a similar claim where the petitioner said the state court's denial of post-conviction certain procedures didn't allow me to establish my actual innocence that would have gone back and required a new trial. That was a denial of due process, and the court said that's just an actual innocence claim. But how can you say that she's saying that? She said exactly the opposite of that. I hear that. I'm not saying that, at least I understand it, that he's actually innocent. What she is saying is that this complaining witness got on the witness stand and committed falsehoods. She intentionally lied, and that's what she's predicating the basis of. She's not saying in a vacuum that he's actually innocent. She's saying that Giglio and Nabu don't necessarily require the prosecution to be complicit. Yes. And that's a somewhat different claim. That's another way to interpret the claim. That's true. If the court wants to go that route, I think then the answer is the Colorado Supreme Court specifically said there's no such claim like that by the U.S. Supreme Court, and so we can look at this, and we are looking at this under state law. But the portion of the Colorado Supreme Court's opinion that I quoted in a block quote and petitioner noted also in the reply brief said there's no federal due process right to a new trial based on post-trial evidence like this. And so that's the case that I would say the portion of the Colorado Supreme Court case saying, well, we don't recognize any right like that. We're moving on to what we understand the real argument to be and what we can insert on here, which is this state law new trial claim based on post-trial evidence. Because I think the process and the procedure here is important, for me at least. You have the trial and the conviction. You have an appeal by the defendant, and while that appeal is pending, you have the recantation, of which then the Colorado Court of Appeals sends back to the district court for an evidentiary hearing, of which the evidentiary hearing was completed, and the Supreme Court of Colorado had all of that. Yes. Okay, I just want to be sure that. Yes, that's absolutely correct. And the Supreme Court considered the issue. They didn't say the issue is off bounds or legally it is an inappropriate argument. They considered it, but simply applied a standard that it doesn't rise factually to a level sufficient for us to grant relief because we can't say that it's more likely than not. Yes. And is that more likely than not standard that the Colorado Supreme Court adopted? Were they articulating what they thought was a U.S. constitutional standard, or were they articulating something that they thought was a U.S. constitutional standard? They understood it to be a Colorado state standard. Is that proper? I mean, they were applying U.S. constitutional challenges, and so was it proper to restrict a constitutional challenge according to evidentiary restrictions that a state would impose? I mean, that seems a little bit odd. Well, it wasn't a constitutional challenge before that court. I mean, the question that the petitioner raised in that proceeding and on which cert was granted, it didn't invoke the Constitution or due process. What it said is the state district court abused its discretion in failing to grant a new trial based on this post-trial evidence. And that's the facts, but what was the legal argument? They didn't raise a constitutional argument at all? No. They said it violated what, the Colorado Constitution? What did it violate? That it violated Colorado case law, Colorado Supreme Court case law. And did that Colorado Supreme Court case law cite or rely on U.S. constitutional case law? It didn't purport to be, no. And in fact, in this, for RV People, the Colorado Supreme Court opinion, the court specifically said, this is not a question of federal constitutional law. The federal Constitution doesn't require any standard for states to grant post-trial, new trials based solely on post-trial evidence, just evidence that came out of nowhere that was not discovered. And there had been a Brady claim and a claim of prosecutors knowingly presenting perjury. Those claims were rejected by the Colorado District Court in the post-conviction proceedings. I'm confused. Just one last question. I probably will remain confused even after the answer. I might not clear it up at all. The Colorado Supreme Court applied Colorado law as to when they were going to grant post-conviction relief. I understand that. And that's unique to Colorado. This is the way we're going to run our courts in Colorado. But the underlying challenge, not the standard for habeas purposes that you have to meet, but once you've met those purposes, wasn't the underlying challenge that there was a U.S. constitutional violation? You're saying no. No. You're saying the underlying challenge, once I meet this bar, whatever it is, whether it's more likely than not or probable or anything else, once I meet that, you're saying that the defendant is arguing that I've met the standard, I'm now at the table, I'm in the room, according to Hamilton, and I want to make an argument. What is my argument? My argument is that some state violation occurred or that some U.S. constitutional violation occurred. Why am I getting a new trial? Now that you're going to hear my argument, you're going to consider it on the merits. What was the merits argument? Why I get a new trial? Was it a state right that he gives me a new trial? Or was it a federal right? I agree it was a state right that was doing the gatekeeper monitoring. But once we get past that, I thought it was a U.S. constitutional claim that gives me the new trial. Am I wrong? I would like to go back and re-read it. I'll make sure I'm not crazy. But my understanding was the argument was just Colorado state case law requires a new trial. And the trial court, the post-conviction court, applied too low of a standard. I know. They looked at the Colorado case law. And I didn't go back and read some of those Colorado cases. But I was assuming those were cases interpreting U.S. I don't believe that's correct, Your Honor. So were they interpreting the Colorado Constitution? I would say yes. So this is a Colorado issue through and through, from beginning to end. And it doesn't have the import of any precedent from us about federal law. Isn't Colorado pretty able to make its own determinations of what Colorado law is? Yes. And that's exactly what Colorado Supreme Court said here. It said, look, there is no due process right, freestanding right to a new trial based solely on post-trial evidence if you're not alleging that the prosecutors knowingly suborned perjury or withheld evidence under Brady. And did the claimant, habeas far, did he say, I agree that that's right, that I'm only asserting state right here? His argument was only ever, it wasn't constitution or due process. His briefs didn't even invoke those terms. So he was just making this argument based on the state standard had been misapplied by the state post-conviction court. And the Colorado Supreme Court here said, there's no federal standard like this. And we're going to clarify here what our state standard is, because the U.S. Supreme Court and the federal constitution allow states to draw this line and strike this balance between finality and fairness. And each state, almost every state provides for some form of post-conviction relief based solely on newly discovered evidence after trial. We are enunciating here, clarifying what that standard is for our state. We don't want to take any more of your time, but when we get rebuttal, I'd like just a confirmation that you believe that the underlying claim is only a state violation that's being asserted for retrial and not a federal right. But go ahead. And you'll have more than 16 seconds. And if I'm incorrect, Your Honor, then... That's okay. I don't want to take more of your time now. We'll figure it out and we'll hear from them. So I'd like to have you go on with your other argument. I'll just make this other point then. If I'm incorrect on that point and the Colorado Supreme Court was applying federal law, then EDPA does apply and petitioner to show a U.S. Supreme Court case that the Colorado Supreme Court was contradicting or unreasonably applying to the facts of this case. Which brings us then to what Judge Mates did that we have before us. Yes. All right. And he, for that reason, denied relief. I want to note that the Colorado Supreme Court's standard that they applied for granting a new trial can't violate due process or be contrary to federal law if for no other reason that it the verbatim standard that this court applies to claims for newly discovered evidence seeking a new trial. And the Colorado Supreme Court cited United States versus McCullough on page 708 of the Colorado Supreme Court's opinion. The Colorado Supreme Court standard that it noted here of requiring more than just reasonable doubt being created by a post-trial recantation, that it's to show it's more likely that the recantation would be believed over the prior testimony, that is this court's standard. It's verbatim, this court's standard noted in United States versus McCullough, which the Colorado Supreme Court noted in its opinion. I guess just to touch briefly then on the other standard, if this court does believe that this is essentially an actual innocence claim or wants to note at least in its opinion that it can't grant relief on that basis, I would just note that the state court's credibility determinations do apply. This court defers to them. That's the state court judge that heard both the trial and post-conviction testimony, observed the victim in person, also considered things like the boyfriend saying, she actually told me that she's recanting just because she wants to get the family together again and she actually was molested. The U.S. Supreme Court, in the few cases where it has stated that, what has assumed for argument purposes that there could be such a thing as a freestanding actual innocence claim, the Supreme Court has noted two things that I want to point out that I don't think came through as clearly as I would like in the brief. First of all, in House v. Bell, the U.S. Supreme Court said that standard would be even higher than the Schlupp standard. The Schlupp standard is the gateway standard to getting past a procedural bar and considering the merits of an underlying constitutional trial violation, which petitioner is not asserting here. So he would have to meet not only the Schlupp standard of new reliable evidence, trustworthy eyewitness accounts, which is essentially impossible because the state court said this is not a trustworthy eyewitness. She actually testified falsely about telling the prosecutors and the guardian ad litem and the social workers that I recanted prior to trial. So that's almost an impossible standard to meet. I also wanted to point out that when the U.S. Supreme Court has assumed that a freestanding actual innocence claim could exist, when it's done that, it's explicitly noted that would be in the case that there's no state relief available. In this case, there was state relief available. In Herrera v. Collins, the court noted that would be assuming something like that could exist in a capital case and there's no state procedure available to vindicate that right. That might violate the Constitution to execute someone who clearly meets this standard of he's actually innocent. And that would be the appropriate time for this court to take up a claim like that or like this. I mean, I don't fault petitioners for raising this claim, but this would not be the right case for this court to take up and consider a claim like this. It would have to be one where you could really say there's just no reasonable argument here. The person's falsely in prison and we just don't have anything even close to that in this case. Your honors, I really don't have anything else, but I'm happy to answer any other questions the court has. Well, I want to go back to what Judge Ebel is talking about and looking at what Judge Machen said as to what the Colorado Supreme Court said. He says, whether to grant a new trial upon the discovery of new evidence, undermining confidence of the reliability of criminal conviction is largely a matter of policy, requiring a balance between the need for finality and state's interest in ensuring the fairness and accuracy of its proceeding. And he cites People v. Snyder. Then Judge Machen specifically says, surprisingly, there is no mention of the Judge Machen read it the same way, that Colorado wasn't looking at a constitutional issue. Right? Well, it has to be right. That's what he said. So I'm not going to ask you that. Judge Machen would be so pleased to have heard you say that. I believe he read it the same way, although he ultimately said he couldn't grant relief because there was no U.S. Supreme Court case that would contradict anything in the court's opinion. Well, he specifically said he couldn't grant relief under 2254D, I believe. Yes. And I think just to quibble with one point you made there, I think that the Colorado Supreme Court was acknowledging individual liberty and those rights when it referred to fairness and accuracy of proceedings and states balancing that versus finality. Why do you want to confuse us more, counsel? It's hard to let the clock run out. I haven't made every last point, but at that point, thank you very much, Your Honor. I say thank you for your time and ask that the decision be affirmed. Thank you so much. Why don't we give the appellant a total of two minutes, or let alone two minutes of time to answer questions. Thank you, Your Honor. I appreciate the consideration. At the outset of my two minutes, I'm going to do something I've never done before, which is to offer a suggestion to the court that perhaps we have supplemental briefing in light of the government's concession today, which we're hearing for the first time today. That may be an option the court may want. Well, they only conceded one issue that you probably would have won anyhow, so I'm not sure that that drastically changes anything. I don't think it helped me. Fair enough. Judge Ebell, to answer your question, the state's appellate counsel who presented the issue to the Colorado Supreme Court did not couch it in federal constitutional terms. I must concede that. I appreciate that straightforward answer. But that doesn't matter because that would matter if they were arguing procedural default, but they have now waived that defense. Now, you had me until then. What did you say? An argument that this wasn't presented to the state courts is a procedural default argument, but the government has now made the concession that they're waiving. Gotcha. Okay. I understand you. I understand what you said. I wanted to be clear about the factual record. I got you. Okay. And I do just want to respond quickly to Mr. Crane's comments about the state post-conviction court's credibility findings. Volume 1 at 519, the judge said the complainant, quote, has substantial credibility issues, unquote. He's clearly referring to both the trial and the other here, the post-trial. Let me ask you this because I made a note to myself as I was reading all these. Has there ever been an issue of a mental question in regards to the recalcitrant person in this matter? I don't think that was litigated as such, but certainly there's a whiff of that that comes off the record. Okay. I know that's beside, but it just struck me. Did that issue ever come up? Evidently, in the briefing it had. Certainly that she was a rebellious teenager acting out in response to some discipline from my client is in the record. And I see my time has run. We asked the court to reverse. Thank you. Thank you. Yes, really, really interesting questions and well done. Thank you. On both sides, both today and in your briefs. Thank you. This matter will be submitted. The next case is U.S. versus Duran, 18-1062. Thank you.